IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

THOMAS C. CREWS    )
             )
  Plaintiff,     )
             )
v            )  CV - 06 - 2232
             )
NATIONAL BOAT OWNERS   )
ASSOCIATION (NBOA) MARINE )
INSURANCE AGENCY, INC.; MARKEL )
AMERICAN INSURANCE COMPANY; )
and JACKIE ASHE, individually )
and as agent for the NATIONAL )
BOAT OWNERS ASSOCIATION (NBOA) )
MARINE INSURANCE AGENCY, INC. )
             )
  Defendants.    )

## COMPLAINT

Now comes the plaintiff, Thomas C. Crews, by and through his counsel and for his Complaint against the Defendants allege as follows:

This action arises out of the practice of Defendants of failing to abide by the terms of Defendants' contract with Plaintiff, failing to provide the appropriate insurance coverage sought by the Plaintiff for his personal property, engaging in a pattern of deceptive practices for the purposes of inducing Plaintiff to continue to purchase insurance for his personal property, which Defendants assured Plaintiff was appropriate for his protection in the event of disaster; engaging in a practice of inducing Plaintiff to "renew" his insurance policy without advising Plaintiff, until after the premium was paid, that

1

@006       Steven Goldman     2924667519 XAF 02:51 5002/41/01

defendants had substantially altered the terms of the policy for the purpose of eliminating and/or restricting insurance coverage for Plaintiff's personal property; and further intentionally and with malice refusing to provide coverage to Plaintiff for his losses of the insured property despite the explicit contract terms providing for insurance coverage to Plaintiff for his losses.

1. For several years prior to 2002, Thomas C. Crews, an adult resident of the State of Alabama and Montgomery County, Alabama, hereinafter referred to as "Plaintiff", had purchased insurance for his boats from Defendant National Boat Owners Association and also its predecessor, Florida Marine Insurance Company.

2. The term "DEFENDANTS" as used in this complaint means and includes all persons and entities listed and named as Defendant in the caption of this Complaint or any amendment thereto and in the text paragraphs thereof, whether identified or fictitious, and includes any Defendants hereafter added by amendment or otherwise (unless otherwise specified in the amendment).

3. In doing the acts and omissions herein alleged, Plaintiff alleges that Defendants have conspired with and among one another and/or with other individuals or entities presently unknown to Plaintiff, to engage in the conduct made the subject

of this Complaint and acted as agents of one another, pursuant to a common goal or scheme to carry out the wrongful patterns of conduct herein alleged.

4.   This Court has jurisdiction over the Defendants, who were at all relevant times herein acting in concert with each other pursuant to the common plans and schemes described hereinafter, in actions directed at and into the State of Alabama and Montgomery County, Alabama. Defendant do, or have done, business in this County and this State.

### JURISDICTION AND VENUE

5.   The torts and wrongs alleged were committed within the jurisdiction of this Court, significant damages and losses were suffered in this jurisdiction, the property rights of Plaintiff were damaged or impaired in this jurisdiction.

6.   Defendants' wrongful activities were directed by or on their behalf to the Plaintiff, who resides and works in this jurisdiction.

Plaintiff has satisfied all contractual conditions precedent to coverage before bringing the claims set forth in this Complaint.

### FACTUAL BACKGROUND COMMON TO ALL COUNTS

7.   In 2002, Plaintiff Crews sought **renewal of** an existing boat insurance policy known as "The Helmsman Yacht Policy" with

3

Defendant National Boat Owners Association (NBOA) Marine
Insurance Agency, Inc. (hereinafter referred to as "Defendant
NBOA") and with Defendant Markel American Insurance Company.

8.    Plaintiff sought from Defendants proper and adequate
insurance coverage for Plaintiff's boats first identified to
Defendants as being moored and berthed in the Gulf of Mexico, in
and around Destin, Florida, and then subsequently described in
the contract of insurance as moored and berthed in and around
Orange Beach, Alabama.

9.    Plaintiff's purpose in seeking proper and adequate
insurance coverage for his boats was to protect his property from
all hazards, including winds and hurricanes, while moored and
berthed as described under Plaintiff's policy of insurance with
Defendants on the watercraft.

10.    Defendant Jackie Ashe, an agent of Defendants NBOA and
Markel American Insurance Company dealt directly with Plaintiff
by providing him with information and prices and certain terms
and conditions of insurance coverage for his boats. Defendant
Ashe had the authority to act on behalf of Defendants NBOA Marine
Insurance Agency and Market American Insurance Company
(hereinafter "Markel").

11.    On October 3, 2002, Defendant NBOA notified Plaintiff
that it was "pleased to offer the renewal of your Marine
Insurance policy" and enclosed a "watercraft information form"

4

and instructed Plaintiff to return the form to Defendant NBOA with a check for $5267 prior to November 9, 2002, to keep his existing insurance coverage in force.

12.  Plaintiff had sought watercraft insurance through Defendant Jackie Ashe, an employee of Defendant NBOA, for the purpose of renewing and continuing insurance on the watercraft owned by Plaintiff.

13.  On October 15, 2002, the Plaintiff, signing as "applicant", submitted Defendants' watercraft form as a part of his application to Defendants for the purpose of continuing watercraft insurance for Plaintiff.  The Plaintiff's watercraft application form, submitted on Defendants' form provided to Plaintiff, listed as producer "NBOA Marine Insurance Agency" and listed Defendant, Markel American Insurance Company as "CO/PLAN". Plaintiff's watercraft application form described in the watercraft application form to the Defendants, NBOA Marine Insurance Agency, Jackie Ashe and Markel American Insurance Company was accepted for coverage by Defendants.

14.  The Plaintiff's Watercraft Application for insurance coverage described in paragraphs 1 and 2 above identified the watercraft for which insurance coverage was sought as "SEA RAY/450 EXPRESS BRIDGE", and further noted on the 2002 Watercraft application in the application section, "Describe all credits to Apply" the following:  "Dinghy: 2001, 2001 HP120, Yamaha" and as

5

"11'AQUASCAN#USAXIWI11012ED12; #60G000327".  Watercraft SEA
RAY/450 Express owned by Plaintiff is the same as and is also
known as a 2000 Cabin Cruiser, manufactured by Sea Ray, and is 45
feet in length and bore a registration number of 1165-DG and Hull
Identification number of SERP4612H900.

15.  The Plaintiff's watercraft insurance renewal
application for 2002-2003 approved on October 3, 2002, together
with Plaintiff's payment for renewal of insurance, resulted in
Plaintiff receiving from Defendants amendments to his policy of
insurance covering his boat for the period November 9, 2002,
through November 9, 2003, which, *inter alia*, specified that the
boat with Hull ID Number SERP4612H900 "will be moored/berthed at:
Orange Beach Al 36561". The Amendment entitled "Amending
Navigation Territory & Mooring Location" also set forth the
following navigating limits:

> U.S. Atlantic and Gulf of Mexico coastwise and inland waters
> between Eastport, ME and Grand Isle, LA., both inclusive;
> the Great Lakes including the St. Lawrence River not east of
> Quebec City; US Western Rivers, including the Mississippi
> River, it's tributaries and connecting waterways; and the
> territorial waters of the Bahamas, and Turks and Caicos
> Islands. Addtional Navigation Restrictions, YHBI 99 01,
> attached.

16.  As a result of the Plaintiff's request for insurance
policy renewal, his signing and submission of the Watercraft
Application form described in paragraphs above and Plaintiff's
payment of the policy amount requested by Defendants for renewal
of watercraft insurance, Defendants contracted to provide

6

continued coverage as described in the policy of insurance,
number YH 8626311 for the period 11/09/2002 to 11/09/2003.

17.  In October 2003, Plaintiff was notified and represented
to by Defendant, Markel American Insurance Co., that Marine
Insurance policy YH8626311 could be renewed by the Defendants.
Defendants NBOA and Markel American Insurance Company enclosed in
the October 2003 notice of renewal a watercraft information form
and required that Plaintiff pay $4184 prior to November 9, 2003,
in order "to keep your [Plaintiff's]insurance coverage in force",
but defendant did not include the policy terms.

18.  In October 2003, Defendants represented to Plaintiff
that the original policy terms were being renewed and based on
that representation, Plaintiff paid the policy premium to
Defendants.

19.  Plaintiff paid Defendants, NBOA Marine Insurance
Agency, Inc. and Markel American Insurance Company for that
renewal coverage the requested sum of $4,184 by his check dated
October 31, 2003, which check Defendants cashed on November 4,
2003.

20.  It was not until January 13, 2004, Defendant, NBOA
Marine Insurance Agency, notified Plaintiff that Defendants had
renewed Plaintiff's Policy No. YH8626311 effective "11/09/2003 to
11/09/2004".  With that January 2004, letter giving notice of
renewal, Defendant, NBOA Marine Insurance Agency, enclosed "The

7

Helmsman Yacht Policy" entitled "Renewal" issued by Defendant,
Markel American Insurance Company.

21. By the terms of the policy effective from 11/09/2003 to
11/09/04, Defendants, Markel American Insurance Company and NBOA,
had instituted four policy amendments and continued to require
for policy coverage that Plaintiff's boat be moored and berthed
at Orange Beach, Al 36561. That renewal described the boat as
having Hull ID Number SERP4612H900 and as manufactured by SEA
RAY.

22. The four amendments to the Plaintiff's policy of
insurance effective from November 9, 2003, to November 9, 2004,
did the following:

a. provided for deductible changes for marine electronics,

b. provided a general amendatory endorsement that deleted
entirely paragraph 3 of the former policy and prohibited the
transportation of the boat more than 350 total miles by a
contractor or common carrier and prohibited its transport as
waterborne cargo,

c. changed the automatic fire extinguisher requirements, and

d. under the heading "Additional Navigation Restrictions"
stated "warranted not south of Savannah, Ga, and no Gulf
navigation between June 1 & November 1, both dates inclusive".

8

23.   The January 2004 actual notification to Plaintiff of
the policy effective from November 2003 to November 2004 also
described the navigating limits of the policy as follows:

> "U.S. Atlantic and Gulf of Mexico coastwise and inland waters
> between Eastport, ME and Grand Isle, LA., both inclusive; the
> Great Lakes including the St. Lawrence River not east of
> Quebec City; US Western Rivers, including the Mississippi
> River, it's (sic) tributaries and connecting waterways; and
> the territorial waters of the Bahamas, and Turks and Caicos
> Islands. Additional Navigation Restrictions, YHBI 99 01,
> attached".

24.   This notice of renewal came from Defendants after
Plaintiff had been told by Defendants that his original insurance
policy had been renewed and after Plaintiff had paid the premium
for the renewal of his original policy.  The Defendants did not
tell the Plaintiff of amendments to the insurance policy terms
renewed 2003-2004 until after payment by Plaintiff of the renewal
premium.

25.   The terms Defendants inserted into the insurance
contract unknown to Plaintiff and after payment of the yearly
premium included additional language as follows: "Additional
Navigation Restriction, MYHBI 99 01 attached." MYHBI 99 01
purported to modify the existing policy by stating the following
language:  "WARRANTED NOT SOUTH OF SAVANNAH, GA, AND NO GULF
NAVIGATION BETWEEN JUNE 1 & NOVEMBER 1, BOTH DATES INCLUSIVE".
Defendants did not at any time change the contract specification
for the berthing and mooring of Plaintiff's boat, which continued

9

to require mooring and berthing of his watercraft at Orange Beach, Alabama.

26.    Based on the representations of the Defendants and in order to renew the previous insurance policy and to continue to protect the above-described boat of Plaintiff in the location that it had always been, i.e. Orange Beach, Alabama, during the dates 11/09/2003 to 11/09/2004, the Plaintiff paid the insurance premium for the renewal by check on October 31, 2003, to Defendant NBOA Marine Insurance Agency, Inc. in the sum of $4184 for renewal of his previous policy.  Plaintiff's payment was accepted by Defendants before the notice of policy changes from Defendant, Markel Insurance Company dated November 9, 2003, was seen by Plaintiff or arrived at the Plaintiff's place of business.  No one from any of the Defendants ever informed Plaintiff prior to the payment of this renewal premium that there was a so-called additional change being made to the insurance policy after Plaintiff had renewed it which change would have restricted the navigation of the Plaintiff's yacht or created a "Warranty" that the yacht not navigate south of Savannah, Georgia during any time period, since that restriction and warranty were never in the original policy of insurance and thus could not have been "renewed."

27.    Plaintiff relied on the notification and representation of the Defendants that the original insurance policy had indeed

10

been renewed and his boat was protected just as it had been in his original policy.

28.  In September 2004, the Plaintiff's boat, while insured by the Defendants, was damaged by Hurricane Ivan while moored and berthed in Orange Beach, Alabama.

29.  Plaintiff gave prompt notification to Defendants for damage due to the Hurricane Ivan and fulfilled all conditions precedent to collection of insurance proceeds covering the damage to his boat pursuant to Plaintiff's contract of insurance with Defendants.

30.  Plaintiff then received a Notice of Cancellation and nonrenewal effective at 12:01 a.m. on 11/09/04 for Policy No. YH8626311.  The notice of nonrenewal stated that the notice was mailed on October 19, 2004.

31.  On or before October 20, 2004, Defendants promised Plaintiff that Defendants' check in the approximate amount of $31,000 would be sent promptly pursuant to Plaintiff's contract of insurance with Defendants and on account of the hurricane damage to Plaintiff's boat.

32.  Defendants subsequently on or about October 20, 2004, specifically notified Plaintiff that the Defendants would pay to Plaintiff, pursuant to the contract of insurance of Defendants with Plaintiff, the sum of $31,780.

11

33.    Defendants adjuster, Mark Headel, promised Plaintiff on October 20, 2004, and thereafter that Defendants were "processing" a check, which would be mailed "this afternoon" or "tomorrow".

34.    By letter dated October 21, 2004, Defendant Markel American Insurance Company wrote regarding Plaintiff's claim of damage, Claim No. 041686, that it was refusing all coverage on account of the "Additional Navigation Restrictions" and added that because the "vessel was south of the above referenced area, you are in breach of this endorsement, rendering your coverage suspended during the period of such breach".

35.    The Notice of Cancellation described in paragraph 30 above was received after Plaintiff filed for insurance benefits under his policy with Defendants regarding boat coverage.

36.    Defendants uniformly represented to Plaintiff by oral and written representations, through suppression of material facts, conduct and/or contractual undertakings and promises that, caused Plaintiff to believe, among other things:

a. that the insurance sold to Plaintiff for protection of his boat moored in Orange Beach, Alabama was appropriate coverage for that watercraft in case of harm to it;

b. that Plaintiff's timely payment of policy premiums as billed would renew his policy protection in the event of damage to his boat;

12

c. that Plaintiff could rely on the representations of
Defendants that the Defendants' policy of insurance on
Plaintiff's boat was appropriate for this boat kept in Orange
Beach, Alabama and used in and around Alabama and the Gulf of
Mexico.

d. that Defendants were renewing Plaintiff's insurance
policy that provided protection to his boat when it was moored
and berthed in Orange Beach, Alabama.

37.  Defendants intended for Plaintiff to rely on
Defendants' representations set forth in paragraph 36 above.

38.  Plaintiff did rely, to his detriment and loss, on
Defendants' representations that Plaintiff had proper and
adequate insurance protection for his boat while it was moored
and berthed in Orange Beach, Alabama.

39.  Defendants knew or should have known that their failure
to provide Plaintiff with insurance coverage as promised after
the boat was damaged by hurricane in September 2004, would cause
economic harm to Plaintiff.

40.  Defendants have a consistent and repeated pattern and
practice in connection with contracts of insurance sold to its
customers, including the Plaintiff:

a. of requiring payment for policy coverage renewal while
concealing amendments and restrictions until after Defendants'
receipt of payment;

13

b. of unilaterally changing the contract of insurance without bargaining or even disclosing amendments and restrictions to policy coverage until after receipt of Plaintiff's premium payments;

c. of changing the terms of a customer's policy to benefit themselves without the full knowledge and consent of their customers;

d. of canceling the contract of insurance when payment under the contract is claimed;

e. of failing to provide appropriate insurance for the circumstances sought by Plaintiff, i.e. that Plaintiff would keep and use his watercraft in and around Orange Beach, Alabama and the Gulf of Mexico.

f. of adding contract terms undisclosed to plaintiff after renewal that made Plaintiff's fulfillment of the contract terms impossible.

### COUNT I

### FRAUD

41.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs and subsequent factual averments of this Complaint as if set forth herein verbatim.

42.    Defendants have intentionally and knowingly breached the contract of insurance with Plaintiff.

14

43. Defendants have warranted, expressly and by implication, that the policy and contract which Defendants offered to Plaintiff and which Plaintiff accepted in 2003 was appropriate for the coverage that Plaintiff sought for his watercraft.

44. Plaintiff was induced to rely, and did rely, on Defendants' promises to his detriment.

45. Defendants' misrepresentations were intentional, reckless and/or innocent.

46. Defendants' fraudulent conduct and practices were attended by such malicious, oppressive, reckless, and or wanton conduct as to warrant an award of punitive damages.

47. Defendants have caused substantive loss and harm, including mental anguish and other economic losses to Plaintiff by Defendants' unlawful conduct.

48. As a direct and proximate result, Plaintiff has suffered these damages.

## COUNT II

### BREACH OF CONTRACT

49. Plaintiff re-alleges and incorporates the preceding paragraphs and subsequent factual averments of this Complaint as if set forth herein verbatim.

15

50.    Plaintiff is a direct beneficiary of contracts between himself and Defendants, providers of insurance on Plaintiff's watercraft.

51.    Defendants' contractual obligations included, among other things, providing appropriate insurance, having an agreement with the Plaintiff as to the terms of the contract and providing payment to Plaintiff when the terms of the contract so provide payment is due Plaintiff.

52.    Defendants have breached their contractual obligations to Plaintiff by their failure and refusal to provide the payment specified under the conditions of the contract, or Defendants have performed their contractual undertakings with such negligence and recklessness as to constitute a breach of contract.

53.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages.

### COUNT III

#### BAD FAITH FAILURE TO PAY UNDER CONTRACT OF INSURANCE

54.    Plaintiff re-alleges and incorporates the preceding paragraphs and subsequent factual averments of this Complaint as if set forth herein verbatim.

55.    Defendants' decision to refuse to pay Plaintiff's claim pursuant to his insurance coverage had no lawful basis; Defendant' acts constitute willful and wanton misconduct done

16

with conscious disregard of the fact that the Defendants' actions were likely to harm Plaintiff and to cause him to suffer economic and other losses and to suffer embarrassment and humiliation and severe mental anguish.

56.  Defendants owed Plaintiff the duty of care in the rendition of services referred to herein, including, but not limited to, fiduciary duties of full disclosure and timely reporting, loyalty, honesty and fair dealing; statutory and/or regulatory duties; duties to hire, train, supervise and discipline its employees engaged in providing service and benefits to Plaintiff.

57.  Defendants' duties of care arise from their statutory and regulatory obligations as sellers of insurance, as well as contractual undertakings, voluntary assumption of certain duties, partial disclosures, and the special or confidential relationship which existed between the parties.

58.  Defendants' conduct herein alleged, including violations of laws designed to protect persons such as Plaintiff, ratification of its' employees' and/or agents' misconduct, and ongoing non-disclosure of material facts, among other things, constitutes breach of those duties.

59.  As a direct and proximate result, Plaintiff has suffered damages, including, but not limited to, damages of the type contemplated by the laws which Defendants have violated.

17

60.  Defendants' breaches were attended by such malicious, oppressive, reckless, and/or wanton conduct as to warrant an award of punitive damages.

### COUNT IV

### NEGLIGENT TRAINING, SUPERVISION AND RETENTION

61.  Plaintiff re-alleges and incorporates the preceding paragraphs and subsequent factual averments of this Complaint as if set forth herein verbatim.

62.  Defendants owed Plaintiff a duty of care and professionalism in the provision of insurance for his watercraft, in training and supervising its employees to perform those services in full compliance with the laws of the State of Alabama, in not engaging in or allowing its agents to engage in the wrongful practices herein alleged, in not suppressing or concealing such activities, or enabling the agents of defendants to do so, and in discouraging Defendants' employees to suppress material information to Plaintiff or to have made material misrepresentations to Plaintiff.

63.  Defendants owed a duty to Plaintiff of putting forth their loyal, honest and fair dealing employees to act in compliance with State laws and contractual and other obligations arising from the special and confidential relationship and trust between the parties.  Alabama statutes and regulations govern the insurance industry, and Defendants' superior knowledge of the

18

insurance industry, its practices, and applicable rules,
regulations made it reasonable for Plaintiff to rely on such
licensed professionals as Defendants because they are a specially
defined entity permitted by law to provide such services.

64. Defendants breached their duty by negligently retaining
employees known to have violated state and/or federal laws
relating to watercraft insurance for Plaintiff, and known to have
violated Defendants' state company policies and procedures
regarding provision of proper and necessary insurance for
Plaintiff's watercraft.

65. Defendants' negligent retention of employees known to
have engaged in the misconduct described herein acted as a
ratification of such misconduct.

66. Defendants each, and working collectively or as agents,
breached the duties that they owed Plaintiff, and such breaches
arise out of the negligent or wanton conduct of the Defendants
and those who acted in concert or complicity with them or acted
as their agents, servants or employees, and in the line and scope
of their business and contractual and statutory and regulatory
duties, to engage in material misrepresentations to Plaintiff in
order to preserve and protect the financial interests of the
Defendants and those who acted in concert or complicity with
them.

19

67. Defendants knew, or should have known, of the wrongful or fraudulent practices engaged in by their employees, and knew or should have known that its own training, supervision and retention practices were inadequate to fulfill its obligation to protect the public from unscrupulous, dishonest and deceptive practices by its agents and employees. Defendant knew, or should have known, that its policies and practices in training, supervising and retaining such employees were inadequate to prevent or detect the misconduct described herein, and such inadequate policies and practices thus were the actual and proximate cause of Plaintiff's injuries.

68. Plaintiff has incurred damages proximately caused by Defendants' negligence in training, supervising and retaining its employees.

### COUNT V

### EQUITABLE RELIEF, INCLUDING UNJUST ENRICHMENT

69. Plaintiff re-alleges and incorporates the preceding paragraphs and subsequent factual averments of this Complaint, as if set forth herein verbatim.

70. Plaintiff paid sums of money to Defendants pursuant to the contractual agreements between the parties, and relied upon the promises and representations of Defendants to provide products and/or services thereunder.

20

71.  Defendants breached their contractual and other obligations to Plaintiff, and engaged in conduct which constitutes a fraud upon Plaintiff, as described herein.

72.  As a matter of equity and good conscience, the sums paid to Defendants belong to Plaintiff and should be returned to Plaintiff with interest.

73.  In addition, Plaintiff seeks full and complete equitable relief, including specific performance of all Defendants' duties, full restitution to Plaintiff for all monies expended and all losses incurred as a result or in reliance upon Defendants' misconduct (including the reduced market value of his watercraft), reasonable reformation of the contract between the parties, and all other equitable relief necessary to make Plaintiff whole and to put Plaintiff back in the position he would have occupied absent Defendants' misconduct and breach of contract.

**COUNT VI**

74.  Plaintiff re-alleges and incorporates the preceding paragraphs and subsequent factual averments of this Complaint, as if set forth herein verbatim.

75.  Defendants negligently failed to provide adequate and proper insurance for Plaintiff's watercraft and knew that its amendments and endorsements would deprive Plaintiff of the protection that he sought through the purchase of insurance.

21

76. Defendants intentionally and/or negligently failed to disclose to Plaintiff prior to his renewal of insurance on his watercraft that Defendants were not providing watercraft insurance to Plaintiff that would adequately and properly insure his watercraft at the very location where Plaintiff told Defendants that the watercraft was maintained.

77. Defendants have breached their duty of care and their contractual obligations to Plaintiff by failing to provide the insurance to Plaintiff which Plaintiff sought from Defendants and agreed to purchase.

78. As a direct and proximate result of Defendants' breach of duty to Plaintiff, negligence in providing the proper and adequate contract of insurance sought by Plaintiff of Defendants, and Defendants' intentional policy amendments made without Plaintiff's knowledge or agreement and after his payment of insurance premiums to Defendants, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

79. WHEREFORE, the foregoing averments considered, Plaintiff demands judgment for himself as follows:

a. Compensatory (including mental anguish), incidental, consequential and punitive damages against all Defendants, jointly and severally, for damages according to proof at trial;

22

b. Equitable relief against all Defendants in accordance with proof at trial;

c. Taxing against Defendants, jointly and severally, all fees and costs of any expert, and all discovery and deposition costs and expenses, and other costs of this litigation, as costs of this action, and awarding Plaintiff, such costs, reasonable attorneys' fees and expenses of this action; and

d. Granting such other and further relief, including, without limitation, injunctive relief, declaratory relief, specific performance relief and other forms of equitable relief, as may be just, premises considered.  Plaintiff offers to do equity.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by struck jury of all issues in the Complaint triable to the jury and entry of judgment by the Court in conformity with the verdict of the jury on all equitable issues.

Submitted by,

Susan Williams Reeves
714 South 29th Street
Birmingham AL 35233-2810
205-322-6631
Bar ID No. 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

Attorney for Plaintiff

23

**SERVE DEFENDANTS BY CERTIFIED
MAIL AS FOLLOWS:**

Ms. Jackie Ashe
NBOA Marine Insurance Agency
4404 North Tamiami Trail
Sarasota FL  34234-3864

Markel American Insurance Company
c/o American Underwriting Managers
P.O. Box 906
Pewaukee Wisconsin 53072-0906

National Boat Owners Association
Marine Insurance Agency
4404 North Tamiami Trail
Sarasota FL  34234-3864

Susan Williams Reeves,
Attorney for Plaintiff

9413600868From: 9413600868    Page: 8/13    Date: 9/29/2004 12:01:13 PM


**MARKEL**

# The Helmsman Yacht Policy
## Markel American Insurance Company
### Glen Allen , VA
#### Renewal

**Effective Date**
**11/09/2003**

| Policy Number | Policy Period | Agency Number |
|---|---|---|
| YH 8626311-55    From: 11/09/2003 | To: 11/09/2004 | 226001 |

**Name and Address of Insured:**

CREWS, THOMAS
PO BOX 210999
MONTGOMERY, AL 36101-

**Agency Name and Address:**

NBOA MARINE INSURANCE AGENCY, INC.
4404 NORTH TAMIAMI TRAIL
SARASOTA, FL 34234-3864

**Policy Period:** From 12:01 AM Standard Time on the date shown above at your Mailing Address shown above

In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide insurance as stated in this policy.

| Description of Yacht: | Yacht will be moored/berthed at: Name: | ORANGE BEACH, AL 36561 | | | |
|---|---|---|---|---|---|
| Hull ID Number: SERP4612H900 | CREWS ZING I | Year 2000 | Length 45 ft. | Manufacturer SEA RAY | Type Cruiser | Total Horsepower 900 HP. |

**Navigating Limits while afloat:**

U.S. Atlantic and Gulf of Mexico coastwise and inland waters between Eastport, ME and Grand Isle, LA., both inclusive; the Great Lakes including the St. Lawrence River not east of Quebec City; US Western Rivers, including the Mississippi River, it's tributaries and connecting waterways; and the territorial waters of the Bahamas, and Turks and Caicos Islands. Additional Navigation Restrictions, YHBI 99 01, attached.

| Coverage | Limit of Insurance (if applicable) | Deductible (if applicable) | Premium |
|---|---|---|---|
| HULL | $525,000.00 | $10,500.00 | $3,584.00 |
| TENDER | $15,000.00 | $500.00 | $300.00 |
| PERSONAL PROPERTY | $10,000.00 | $250.00 | INCLUDED |
| BOAT TRAILER | $0.00 | $0.00 | $0.00 |
| RENTAL REIMBURSEMENT | $1,000.00 | | INCLUDED |
| EMERGENCY TOWING AND ASSISTANCE (AGGREGATE) | $2,500.00 | | $275.00 |
| PROTECTION AND INDEMNITY | $300,000.00 | | INCLUDED |
| LONGSHORE & HARBOR WORKERS' COMPENSATION | INCLUDED | | INCLUDED |
| OIL POLLUTION LIABILITY | $500,000.00 | | INCLUDED |
| MEDICAL PAYMENTS | $25,000.00 | | INCLUDED |
| UNINSURED AND UNDERINSURED BOATER | $300,000.00 | | |

Total Premium for Endorsements from Page 2: $0.00

**Total Premium:** $4,159.00

SCANNED

AUG 1 1 2004    RECEIVED

OCT 2 2 2003

INSURANCE AGENCY

* This policy explains how the Limits of Insurance apply.

@030                    Steven Goldman          10/14/2005 15:26 FAX 6175664292

9413600688From: 9413600688    Page: 7/13    Date: 9/26/2004 12:01:14 PM

| Policy Number | Policy Period | | Agency Number |
|---|---|---|---|
| YH 8626311-55 | From: 11/09/2003 | To: 11/09/2004 | 226001 |
| Name of Insured: | CREWS, THOMAS | Effective: | |

**FORMS AND ENDORSEMENTS:** The following form(s) are part of this policy on effective date shown:

| Form | | Edt. | Title | Effective | Premium* |
|---|---|---|---|---|---|
| M | YHBP 7300 | 06 99 | THE HELMSMAN YACHT POLICY | 11/09/2003 | INCLUDED |
| M | YHBI 7503 | 04 95 | DEDUCTIBLE CHANGES - MARINE ELECTRONICS | 11/09/2003 | $0.00 |
| M | YHBP 0002 | 02 01 | GENERAL AMENDATORY ENDORSEMENT | 11/09/2003 | $0.00 |
| M | YHBP 8301 | 02 00 | AUTOMATIC FIRE EXTINGUISHER REQUIREMENT | 11/09/2003 | $0.00 |
| M | YHBI 9901 | 06 99 | ADDITIONAL NAVIGATION RESTRICTIONS | 11/09/2003 | $0.00 |
| | | | Total Premium for Endorsements: | | $0.00 |

* Wherever a premium is shown as 'INCLUDED', the coverage is included with the Premium for another coverage.

**LOSS PAYEE:**
CITIZENS BANK OF RI
PO BOX 42089
PROVIDENCE, RI 02940-2089

**TENDER, TRAILER AND/OR OUTBOARDS:**
2001 AQUASCCN JET 11' S/N VSAXIW11012E012 2001 YAMAHA 120HP 600000527 TOTAL VALUE $15,000

Countersigned on: 10/8/2003        by: _____        at: _____

*Authorized Representative*

In Witness Wherof, we have executed this policy, which shall not be valid unless countersigned by our duly authorized representative.

_signature_
Gregory B. Nevers
Secretary

_signature_
T. Tamraz Grove
President

SCANNED
AUG 1 1 2004

@031        Steven Goldman        10/14/2005 15:27 FAX 8175664292

9413600868From: 9413600868    Page 8/13    Date 9/28/2004 12:01:14 PM

| Policy Number | Policy Period | | Agency Number |
|---|---|---|---|
| YH 8826311-55 | From: 11/09/2003 | To: 11/09/2004 | 226001 |
| Name of Insured: | CREWS, THOMAS | Effective: | |

**Privacy Policy**

We'd like to thank you for your business and let you know we respect your privacy and we are committed to protecting your personal information. Please read this notice, which outlines our privacy policies and practices.

We collect nonpublic information about you from the following sources:

- Information we received from you on applications or other forms such as your name and address.
- Information about your transactions with us, and our affiliates, or others.
- Information we receive from a consumer-reporting agency.

**We do not disclose any nonpublic information about our customer's former customers to anyone, except as permitted by law.**

We may disclose nonpublic personal information about you to the following types of third parties:

- Insurance agents and/or brokers that you have chosen to work with.
- Non-affiliated third parties as permitted by law to provide services you have requested.

We restrict access to nonpublic information about you to those employees who need to know that information to provide service to you. We maintain physical, electronic and procedural safeguards that comply with the federal standards to guard your nonpublic personal information.



SCANNED
AUG 1 1 2004

M YHBI 70 00 04 95              The Helmsman Yacht Policy              10/8/2003 Page 3 of 3

| Policy Number | Policy Period | | Agency Number |
|---|---|---|---|
| YH 8626311-55  **From:** 11/09/2003 | | **To:** 11/09/2004 | 226001 |
| Name of Insured  **CREWS, THOMAS** | | **Effective:** 11/09/2003 | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DEDUCTIBLE CHANGES - MARINE ELECTRONICS

This endorsement modifies insurance provided under the following:

THE HELMSMAN YACHT POLICY

> ## SCHEDULE
>
> **MARINE ELECTRONICS DEDUCTIBLE:  $500**

A. The following is added to subparagraph 1. of paragraph C. Deductibles of I. Loss Conditions, PROPERTY COVERAGE:

   a. The amount shown in the schedule above is the deductible applicable to marine electronics while the insured yacht:

   (1) is attended;
   (2) is not attended for loss caused by any cause of loss except theft other than burglary.

   b. The deductible otherwise applicable to Hull Coverage is the deductible applicable to marine electronics while the insured yacht is not attended for loss caused by theft other than burglary.

B. The following definitions are added:

   **Attended** means that you, your paid captain or crew, or any other person, firm, corporation or legal entity who may be operating the insured yacht with your permission is in, on, boarding or unboarding the insured yacht.

   **Burglary** means the taking of property from inside a building, room or compartment by a person unlawfully entering or leaving the building, room or compartment as evidenced by forcible entry or exit.

   **Theft** means any act of stealing.

SCANNED
AUG 11 2004

M YHBI 75 03 04 95                 The Helmsman Yacht Policy                 10/8/2003 Page 1 of 1

| Policy Number | Policy Period | | Agency Number |
|---|---|---|---|
| YH 8826311-55  From: 11/09/2003 | | To: 11/09/2004 | 226001 |
| Name of Insured:  CREWS, THOMAS | | Effective: 11/09/2003 | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## GENERAL AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

THE HELMSMAN YACHT POLICY

Paragraph 3 under **USE OF YOUR YACHT** is deleted in its entirety and replaced with the following:

   3.  While on land, the insured yacht may be transported overland on its trailer. However, it may not be transported more than 350 total miles overland by a contract or common carrier. The insured yacht may not be transported as waterborne cargo.

Part 3. Exclusions, of Paragraph A. Hull Coverage(including Tenders), of I. Coverage, under **PROPERTY COVERAGE** is deleted in its entirety and replaced with the following:

   3.  Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:
       We will not pay for loss, damage or expense caused by or resulting from:

       a.  wear and tear, gradual deterioration, inherent vice, electrolysis, marring, denting, scratching, weathering, osmosis or blistering of fiberglass, resin or gelcoat or willful misconduct of an insured;

       b.  failure to maintain the insured yacht (including its machinery and equipment) in good condition so that the insured yacht cannot be damaged by ordinary weather or water conditions or the rigors of normal use;

       c.  manufacturer's defects or defects in design.

       However, if the loss or damage has not resulted from the negligence of any insured, this exclusion does not apply to loss, damage or expense directly caused by explosion, bursting of boilers, breakage of shafts or any latent defect in the hull or machinery (excluding the cost and expenses of replacing or repairing the defective part);

Paragraph A. Insuring Agreement, of I. Coverage, under **UNINSURED AND UNDERINSURED BOATER** is deleted in its entirety and replaced with the following:

   A.  Insuring Agreement
       1.  We will pay all sums a covered person is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured boat that is not an insured yacht or a nonowned yacht. The damages must result from bodily injury caused by an occurrence, sustained by the covered person while onboard the insured yacht. The owner's or operator's liability for these damages must result from the ownership, maintenance, or use of the uninsured or underinsured boat that is not an insured yacht or a nonowned yacht.

       2.  If an underinsured boat causes the bodily injury, we will pay only after all other liability bonds or policies have been exhausted by judgments or payments.

SCANNED
AUG 1 1 2004

M YHBP 00 02 02 01                    The Helmsman Yacht Policy                    10/8/2003 Page 1 of 2

| Policy Number: | YH 8626311-55 | Name of Insured: | CREWS, THOMAS |
|---|---|---|---|

The following is appended to **GENERAL LOSS CONDITIONS:**

.1    **VIII. Appraisal**

In the event that You or We dispute the amount of Your loss, either may demand an appraisal in writing. If You or We demand an appraisal, You and We shall each appoint and pay a competent and disinterested appraiser. If the two appraisers cannot agree on the amount of the loss, the appraisers or a judge of local court of record shall select an umpire who shall decide any differences. An award in writing by any two such persons shall determine the amount of Your loss. You and We will be bound by that amount.

You will pay the appraiser You choose and We will pay the appraiser We choose. The expense of the umpire and all other expense of the appraisal will be shared equally by You and Us

.2    **IX. Arbitration**

In the event that You or We disagree concerning whether any or all of the loss is covered by the policy, You and We will resolve this disagreement through arbitration. Arbitration will take place in the county where You live. It will be conducted under the rules of the American Arbitration Association unless We or You object. In that case, You will select an arbitrator and We will select other another arbitrator. The two selected arbitrators will then select a third. If the two arbitrators are unable to agree on the third arbitrator within 30 days, the judge of the court of record in the county of jurisdiction where arbitration is pending will appoint a third arbitrator.

Local court rules governing procedure and evidence will apply unless the arbitrators agree on other rules. The decision in writing of any two arbitrators will be binding on You and Us, subject to the terms of this insurance. Judgment on any award may be entered in any court having jurisdiction.

You will pay the arbitrator that You choose and We will pay the arbitrator We choose. The expense of the third arbitrator and all other expense of the arbitration will be shared equally by You and Us.

SCANNED
AUG 11 2004

9413800568From: 9413800568    Page: 12/13    Date: 9/29/2004 12:01:15 PM

| Policy Number | Policy Period | | Agency Number |
|---|---|---|---|
| YH 8826311-55  From: 11/09/2003 | | To: 11/09/2004 | 226001 |
| Name of Insured:  CREWS, THOMAS | | Effective: 11/09/2003 | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AUTOMATIC FIRE EXTINGUISHER REQUIREMENT

This endorsement modifies insurance provided under the following:

THE HELMSMAN YACHT POLICY

You agree that the insured yacht is equipped with a built-in fire extinguishing apparatus, properly installed in the engine room and maintained in good and efficient working order; and the tanks of said system will be weighed and recharged, if necessary, at least once every year.

SCANNED

AUG 1 1 2004

M YHBP 83 01 02 00          The Helmsman Yacht Policy          10/8/2003 Page 1 of 1

9413800888 From: 9413800888    Page 13/13    Date: 9/29/2004 12:01:15 PM

| Policy Number | Policy Period | | Agency Number |
|---|---|---|---|
| YH 8625311-55  From: 11/09/2003 | | To: 11/09/2004 | 226001 |
| Name of Insured:  CREWS, THOMAS | | Effective: 11/09/2003 | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL NAVIGATION RESTRICTIONS

This endorsement modifies insurance provided under the following:

**THE HELMSMAN YACHT POLICY**

**WARRANTED NOT SOUTH OF SAVANNAH, GA, AND NO GULF NAVIGATION BETWEEN JUNE 1 & NOVEMBER 1, BOTH DATES INCLUSIVE.**

S C A N N E D

AUG 1 1 2004



# MARKEL AMERICAN INSURANCE COMPANY

# MARKEL INSURANCE COMPANY

# THE HELMSMAN YACHT POLICY

TABLE OF CONTENTS

# THE HELMSMAN YACHT POLICY

READ YOUR POLICY CAREFULLY.

|  | Beginning on Page |
|---|---|
| INSURING AGREEMENT | 1 |
| DEFINITIONS | 1 |
| USE OF YOUR YACHT | 2 |
| GENERAL CONDITIONS | 3 |
| PROPERTY COVERAGE | 4 |
| PROTECTION AND INDEMNITY | 7 |
| OIL POLLUTION LIABILITY | 9 |
| LONGSHORE AND HARBOR WORKERS' COMPENSATION | 10 |
| MEDICAL PAYMENTS | 10 |
| UNINSURED AND UNDERINSURED BOATER | 11 |
| GENERAL EXCLUSIONS | 12 |
| GENERAL LOSS CONDITIONS | 13 |

VH7300-0203                                The Helmsman Yacht Policy                                TOC
**INSURING AGREEMENT**

In return for the premium payment and compliance with all applicable provisions of this policy and any endorsements, we agree to provide the insurance coverages you have selected as shown on the Declarations Page, which is part of this policy.

By accepting this policy, you agree that the statements on the Declarations Page and the application are your agreements and representations. This policy is issued in reliance upon the truth of your representations. It includes all agreements existing between you and us or any of our representatives.

It is warranted that the **insured yacht** is seaworthy at the inception of this insuring agreement. Violation of this warranty will void this insuring agreement from its inception.

## DEFINITIONS

Throughout this policy, most words and phrases that have special meanings appear in bold. Only the pronouns "we", "our", "us" and "you" and "your" are defined, but do not appear in bold. This section defines some of the more general terms used in this policy. **Bold** terms that are not listed in this section, are defined in the sections in which they appear.

A.  You and your refer to the 'Named Insured' shown on the Declarations Page.

B.  The words we, us and our refer to the company, shown on the Declarations Page, which is providing this insurance.

C.  **Actual cash value** means the replacement cost of the lost or damaged property less depreciation.

D.  **Bodily injury** means physical injury, sickness or disease sustained by a person including death resulting from any of these.

E.  **Constructive total loss** means that the cost to recover and/or repair the damaged property will exceed the applicable limit of insurance.

F.  **Design defect** means a flaw in the structural plan of the **insured yacht's** hull or machinery, or any of its components. Design defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, **latent defects**, or **manufacturer's defects**.

G.  **Employee** includes a leased worker. Employee does not include a **temporary worker**.

H.  **Family member** means a person who is a resident of your household and related to you by blood, marriage, or adoption, including a ward or foster child.

I.  **Insured** means you and any person, firm, corporation or legal entity that may be operating the **insured yacht** with your prior permission. However, this does not include a paid captain or any paid crew member of the **insured yacht**. Nor does it include any person, firm, corporation or other legal entity or any of their agents or **employees** operating a shipyard, boat repair facility, marina, yacht club, sales agency, chartering agency, yacht broker, boat service station, salvor, towing service or similar organization.

J.  **Insured yacht** means:

1.  the yacht described on the Declarations Page, its spars, sails, rigging, tackle, **marine electronics** (whether or not permanently installed), machinery and fittings which are part of the yacht and which are required to be on the yacht for its safe operation and maintenance while afloat and on shore. It also includes **tenders** and property temporarily removed from the yacht while on shore; and

2.  a **newly acquired yacht** if it is the same type as the yacht described on the Declarations Page and is no more than 5 years old. However, coverage as a **newly acquired yacht** will cease if any of the following occur:

    a.  this policy expires;

    b.  a period of 15 days has passed since you acquired the yacht; or

    c.  you report the new yacht and its values to us with a request for insurance coverage. If we determine the new yacht to be an acceptable risk, we will charge you additional premium and amend this policy or we will issue a new policy for your new yacht from the date you purchased the yacht.

G.  **Latent defect** means a flaw in the material of the **insured yacht's** hull or machinery existing when the **insured yacht** or its components were built and not discoverable by common means of testing. Latent defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, **manufacturer's defects**, or design defects.

H. **Leased worker** means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. Leased worker does not include a **temporary worker**.

I. **Manufacturer's defect** means the improper, incorrect, inadequate manufacturing process of the **insured yacht's** hull or machinery, or any of its components. Manufacturer's defect does not include wear and tear, gradual deterioration, corrosion, rust, electrolysis, osmosis, weathering, inherent vice, latent defects, or design defects.

J. **Marine electronics** means electronic devices designed specifically for marine navigation or marine communication.

K. **Navigating limits** means the area described on the Declarations Page for 'Navigating Limits'.

L. **Newly acquired yacht** means a boat that you purchase during the policy period.

M. **Nonowned yacht** means any inboard motorboat or sailboat, which is not owned in whole or in part by you or by any resident of your household, which is being used by you with the permission of the boat owner. However, a nonowned yacht does not include any boat that is hired or rented by you or made available for your regular use. It includes its spars, sails, tackle, machinery and fittings which are part of the boat and which are required to be on the boat for its safe operation and maintenance while afloat and on shore. It also includes **tenders** and property temporarily removed from the boat while on shore.

N. **Occurrence** means a single event or an accident or series of accidents caused by a single event.

O. **Property damage** means damage to tangible property.

P. **Replacement cost** is the least of the following amounts:

1. the 'Limit of Insurance';

2. the repair or replacement cost of the lost or damaged property using property:

   a.  of comparable material and quality; and

   b.  used for the same purpose; or

3. the cost of replacing the lost or damaged property with substantially identical property.

Q. **Tender** means any auxiliary boat whose main purpose is to service the **insured yacht** for purposes of delivering supplies or ferrying passengers to and from shore. The tender must be able to be stored on board the **insured yacht** while the insured yacht is under way.

R. **Temporary worker** means a person who is furnished to you to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

S. **Wreck** means that the **insured yacht**, has been damaged to such an extent as to render the **insured yacht** unnavigable and we determine the **insured yacht** to be a total or **constructive total loss**.

There are additional words that have special meaning with respect to specific coverages. These words are defined within the section describing the coverage.


## USE OF YOUR YACHT

There are certain restrictions on the use of the **insured yacht**. If you violate any of these restrictions, the coverage will be suspended until you are no longer in violation of these restrictions. We will not cover losses that occur while the insured yacht is being used for an illegal purpose or while coverage is suspended because you violated the restrictions outlined below.

These are the restrictions on the use of the **insured yacht**:

1. The **insured yacht** is for private pleasure use only. Coverage is not provided for charter, hire, lease or any other commercial use. Recreational entertaining of business clients on the **insured yacht** is not considered commercial use.

2. While afloat the **insured yacht** must be used within the **navigating limits**.

3. a. While on land, the **insured yacht** may be transported overland on its trailer, provided the

    tow vehicle has a tow capacity and tongue weight capacity rating greater than required by the combined **insured yacht** and trailer weight. Use of an underrated **tow vehicle** voids all coverage for the insured yacht and trailer under this policy. Underrated tow vehicle means the weight of the tow vehicle and trailer exceed the manufacturer's recommendation for: (1) tow capacity; (2) tongue capacity; or (3) combined gross vehicle capacity.

   b. While the **insured yacht** is being towed overland by a licensed contract or common carrier within the Continental United States, provided the licensed contract or common carrier provides a certificate of insurance covering the **insured yacht**. This policy is then excess to the coverage provided by the licensed contract or common carrier.

YH7300-0203                              The Helmsman Yacht Policy

   c.  While the insured yacht is being transported as waterborne cargo.

3.  If 'Lay Up' is shown on the Declarations Page, during the lay-up period shown:

   a.  If the Declarations Page indicates lay-up is afloat, the insured yacht must be in a safe berth for storage and the insured yacht may not be operated except as required to change berths within the immediate berthing location. However, if you are required to move the insured yacht for the purpose of safety, repairs, and alterations or for betterments and improvements, coverage will not be suspended.

   b.  If the Declarations Page indicates lay-up is ashore, the insured yacht may not be afloat. An insured yacht on a permanent lift or hoist will be considered laid up ashore if it is out of commission and properly winterized.

## GENERAL CONDITIONS

These conditions apply in addition to any condition applicable to a specific coverage or group of coverages:

I.   Policy Period/Territory

This policy applies only to loss or damage, liabilities incurred by any person, injury or damages or expenses of any type that arise out of an occurrence that takes place:

   A.  during the policy period; and

   B.  on land within the United States and Canada, or on land or water within the navigating limits.

II.  Misrepresentation or Fraud

All insurance provided by this Policy shall be null and void if you, at any time, either intentionally conceal or misrepresent any fact, regardless of materiality, or if you misrepresent or conceal any material fact regardless of intent. No action or inaction by us shall be deemed a waiver of this provision.

III.  Notice of Cancellation

You may cancel this policy by returning it to us or our authorized agent, or by advising us or our authorized agent in writing, stating the future date you want the policy to be cancelled. We may cancel this policy by delivering or mailing to you at your last address shown in our records, written notice stating when, not less than 10 days after mailing, the policy will be cancelled. Delivery or mailing of this notice to you shall be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice shall become the end of the policy period.

IV.  Return Premium

If this policy is cancelled, you may be entitled to a premium refund. If we cancel the policy, any return premium will be computed on a pro-rata basis. If you cancel the policy, any return premium will be computed on a 90% pro-rata basis. No premium will be returned to you if we have paid you for a total or constructive total loss of the insured yacht. Any return premium will be paid to you as soon as possible after the cancellation.

V.  Conformity to Statute

This policy is subject to established principles and precedents of federal admiralty law of the United States of America, but where no substantive principle or precedent is applicable state law shall apply. Any provision of this policy that conflicts with applicable law or regulation is hereby amended to conform to the minimum requirements of the law or regulation.

VI.  Liberalization

If we adopt a revision (by applying the revision to all policies issued on or effective after a specific date) that would broaden the coverage in this policy without additional premium within 60 days prior to or during the policy period, the broadened coverage will apply immediately to this policy.

VII.  Legal Action Against Us

   A.  No suit or action may be brought against us unless there has been full compliance with all terms of this policy.

   B.  With respect to coverage provided under PROPERTY COVERAGE:

      No suit or action may be brought against us unless the action is brought within 12 months (or if this limitation is prohibited by law, the shortest amount of time permitted by law) after the date you first have knowledge of the loss.

YH7300-0203                          The Helmsman Yacht Policy                          TOC

    C.  With respect to all other coverage under this policy:

      No suit or action may be brought against us until the amount of a claim against you has been determined or agreed upon.

      Nothing in this policy gives any person or organization the right to join us as defendants in a suit brought against you.

**VIII. No Benefits to Others**

    This insurance shall not directly or indirectly benefit any carrier or other bailee.

**IX.  Transfer of Interest**

    We do not provide any coverage under this policy if you sell, assign, transfer or pledge the insured property unless prior written consent has been obtained from us.

**X.  Right of Recovery**

    If we pay a loss to our **insured** or on behalf of anyone who has a right to recover damages from another person or organization, those rights are transferred to us to the extent of our payment. If we pay a loss to our **insured** or on behalf of anyone who also recovers damages for that loss from others, that person or organization shall hold the proceeds of the recovery in trust for us and shall reimburse us to the extent of our payment. The person or organization to or for whom we make payment must do everything necessary to preserve our right to recover. If our **insured** takes any action that impairs our right to recover, we can consider this policy void and without effect as to such loss.

    If, before or after a loss, you give up your rights to recover damages from any person or organization who may be liable to you for a loss giving rise to your claim under this policy, this policy will be void and will be without effect as to such loss. We will still have the right to recover or retain the premium.

    But, you may waive your rights against another party prior to loss or damage by signing hold harmless agreements in:

      A.  registration forms for sailboat races; or

      B.  storage or slip rental contracts;

    in connection with the ownership of an **insured yacht**.

## PROPERTY COVERAGE

I.  Coverage

    A.  Hull Coverage (Including **Tenders**)

      1.  Coverage

        We will pay for sudden accidental direct physical loss or damage to the **insured yacht** unless:

        a.  the property is described under Property Not Covered in paragraph 2; or

        b.  the cause of loss is described under Exclusions in paragraph 3.

      2.  Property Not Covered

        Under Hull Coverage, we will not pay for loss or damage to dock boxes, moorings, cradles, trailers, wearing apparel, cameras, fishing equipment, diving equipment, fuel, provisions, portable radios and other portable audio equipment, portable cellular telephones, water skis and other sporting equipment, or personal watercraft such as jet skis or wave runners.

        This provision does not apply to **marine electronics**.

      3.  Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:

        We will not pay for loss, damage or expense caused by or resulting from:

        a.  wear and tear, gradual deterioration, electrolysis, corrosion, rust, mold, rot, marring, denting, scratching, weathering, osmosis or blistering of fiberglass, resin or gelcoat or willful misconduct of an **insured**;

        b.  failure to maintain the **insured yacht** (including its machinery and equipment) in good condition so that the **insured yacht** cannot be damaged by ordinary weather or water conditions or the rigors of normal use;

        c.  manufacturer's defects or defects in design.

        However, if the loss or damage has not resulted from the negligence of any **insured**, this exclusion does not apply to loss, damage or expense directly caused by explosion, bursting of boilers, breakage of shafts or any latent defect in the hull or machinery (excluding the cost and expenses of replacing or repairing the defective part).

    B.  Personal Property Coverage

The Helmsman Yacht Policy

1. Coverage

   We will pay for sudden accidental direct physical loss or damage to personal effects, clothing and sports equipment belonging to you or members of your family while these items are on board an **insured yacht** or are being loaded or unloaded. You may also apply this same coverage to the same type of property of your guests and unpaid crew members. We will pay for loss to such property caused by or resulting from any cause of loss unless:

   a. the property is described under Property Not Covered in paragraph 2; or
   b. the cause of loss is described under Exclusions in paragraph 3.

2. Property Not Covered

   Under Personal Property Coverage, we do not cover:

   a. accounts, bills, money, traveler's checks, or any other valuable papers or documents;
   b. jewelry, watches or furs;
   c. household furniture, animals, or merchandise for sale or exhibition;
   d. watercraft including personal watercraft such as jet skis or wave runners; and
   e. property which you acquired primarily for use on an **insured yacht** which is covered under Hull Coverage;
   f. dock boxes, moorings or cradles.

3. Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:

   We will not pay for loss, damage or expense caused by or resulting from:

   a. wear and tear, gradual deterioration, moths, vermin, or inherent vice;
   b. mechanical or electrical breakdown, unless caused by lightning; or
   c. mysterious disappearance or unexplained loss of any kind.

C. Boat Trailer Coverage

1. Coverage

   We will pay for sudden direct accidental physical loss or damage to the boat trailer described on the Declarations Page unless the cause of loss is described under Exclusions in paragraph 2.

2. Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:

   We will not pay for loss, damage or expense caused by or resulting from:

   a. wear and tear, gradual deterioration or inherent vice;
   b. mechanical breakdown.

D. Rental Reimbursement Coverage

1. Coverage

   If the **insured yacht** is damaged by a covered cause of loss, we will reimburse you for the reasonable expenses you incur to charter or rent a replacement yacht. We will only reimburse you if the replacement yacht is similar to the insured yacht and has a rated speed not in excess of 45 miles per hour. We will only reimburse you:

   a. during the **repair period**;
   b. if the **repair period** is longer than 2 days; and
   c. for expenses you incur after the first 2 days of the **repair period**.

2. Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:

   We will not pay for hotels, motels or any other lodging ashore, dockage, rental cars or other ground transportation, airfare, meals, groceries or food. We will not reimburse you for costs when the replacement yacht was rented from any **family member**.

3. The following definition applies to this coverage:

   **Repair Period** as used in this coverage means the period of time that:

   a. begins with the date of the direct physical loss or damage to the **insured yacht**; and
   b. ends on the date when the **insured yacht** should be repaired, rebuilt or replaced with reasonable speed and similar quantity.

   The expiration date of this policy will not cut short the period of repair.

E. Emergency Towing and Assistance

YH7300-0203                    The Helmsman Yacht Policy                    TOC

1. **Coverage**

We will reimburse you for the reasonable expenses you incur if the **insured yacht** becomes disabled and you cannot get voluntary help. We will pay only for expenses incurred for the following emergency services:

   a.   towing to the nearest place where necessary repairs can be made;

   b.   delivery of fuel or repair parts to the site of disablement (excluding the cost of items delivered); or

   c.   the cost of emergency labor performed at the site of disablement.

If a boat trailer is described on the Declarations Page, this coverage also applies to such expenses incurred because the trailer is disabled. However, we will not pay for delivery of fuel to any conveyance transporting the **insured yacht** if the reason the boat trailer is disabled is because the conveyance is out of fuel.

II.  Loss Conditions

   A.  Hull Coverage

      1.  Agreed Value

        We agreed with you that the value of the **insured yacht** is the Limit of Insurance shown on the Declarations Page. We will pay you the 'Limit of Insurance' in the event of loss or damage to the **insured yacht**, which we determine to be a total loss or a **constructive total loss.**

      2.  Replacement Cost

      We will pay for partial loss or damage to the **insured yacht** and all losses to the tender, personal property and boat trailers, on a **replacement cost basis**, except as described in the Actual Cash Value provision.

      3.  Actual Cash Value

      We will pay for repairs to or replacement of the following lost or damaged property on an **actual cash value** basis:

a.    sails and protective covers of any type;

b    personal property;

c    boat trailers;

d.    outboard motors;

         e.  outdrive units which are over five (5) years old;

         f.  engines, transmissions, generators and attached components that are over ten (10) years old. However, if replacement or repair can be made using remanufactured or rebuilt components, depreciation will not be applied. Depreciation will not apply to shafts, struts, or propellers;

         g.  carpeting, upholstery, cushions, and any fabric;

         h.  bottom paint; and

         i.  any non-scheduled tender.

      4.  Repair Clause

      If the hull of an **insured yacht** is molded, made of plywood, plastic or fiberglass and there is a loss to the **insured yacht** under this Policy, we pay for repairs that are made in accordance with the manufacturer's specifications or accepted repair practices including spot repair.

      5.  Unrepaired Damage

      If the **insured yacht** was damaged before the loss, we will not pay to repair the prior damage. In the event of a total loss or a **constructive total loss**, the amount we will pay will be reduced by the cost that would have been incurred had the prior damage been repaired.

   B.  Limits of Insurance

      1.  Hull, Personal Property, Boat Trailer and Rental Reimbursement Coverage

      The most we will pay for a covered loss caused by or resulting from a single **occurrence** is the limit of insurance. The limits of insurance are as follows:

         a.  The limit of insurance applicable to the **insured yacht** is the 'Limit of Insurance' shown on the Declarations Page for 'Hull'.

         b.  The limit of insurance applicable to any **newly acquired yacht** is 150% of the 'Limit of Insurance' shown on the Declarations Page for 'Hull'.

         c.  Subject to a. or b. above, whichever applies, the limit of insurance applicable to property temporarily removed from the **insured yacht** while on shore is 50% of the 'Limit of Insurance' shown on the Declarations Page for 'Hull'. This amount is included in the amount determined by a. or b. above and not in addition to such amount.

         d.  If a separate limit of insurance is shown on the Declarations Page for a **tender**, this is the limit of insurance for the **tender** described on the Declarations Page. This amount is in addition to and not included in the limit of insurance applicable to the **insured yacht**. Loss or damage to any **tender** not described on the Declarations Page with a separate limit of insurance will be adjusted as a partial loss to the **insured yacht** and subject to a. b. and c. above.

         e.  The limit of insurance applicable to the Personal Property Coverage is the 'Limit of Insurance' shown on the Declarations Page for 'Personal Property'.

         f.  If you have coverage for a boat trailer, the limit of insurance is the 'Limit of Insurance' shown on the Declarations Page for 'Boat Trailer'.

The Helmsman Yacht Policy

    g.  If you have coverage for a Rental Reimbursement, the limit of insurance is the 'Limit of Insurance' shown on the Declarations Page for 'Rental Reimbursement'.

The amount we pay for a covered loss caused by or resulting from one **occurrence** will not affect the amount we pay for any subsequent **occurrence**.

    2.  Emergency Towing and Assistance

        a.  The most we will pay for expenses incurred during the policy period under Emergency Towing and Assistance is the 'Aggregate Limit' shown on the Declarations Page for 'Emergency Towing and Assistance'.

        b.  Subject to a. above, the most we will pay under expenses incurred as a result of a single **occurrence** for Emergency Towing and Assistance is the 'Occurrence Limit' shown on the Declarations Page for 'Emergency Towing and Assistance'.

C.  Deductibles

    1.  We will not pay for loss, damages or expense for any one **occurrence** until the amount of the loss, damage or expense exceeds the deductible. We will then pay the amount of loss, damage or expense in excess of the deductible, up to the applicable limit of insurance. In the event that loss occurs as a result of one **occurrence** and the loss would require the application of more than one deductible, only the highest deductible shall be applied to the loss.

    2.  If you have a total loss or a **constructive total loss** to an **insured yacht**, the deductible will not be applied to the loss. However, this provision does not apply to a total loss or **constructive total loss** to a portion of an **insured yacht** such as its **tender**, machinery or equipment, sails or spars.

D.  Salvage and Abandonment

If we pay the 'Limit of Insurance' as shown on the Declarations Page for the **insured yacht**, we reserve the right to take possession of the remains if we elect. Upon our request, you will transfer the title of the property to us or to a salvage buyer appointed by us. Any recovery or salvage on a loss will accrue entirely to our benefit until the sum paid by us has been made up.

We are not obligated to accept any property you abandon, nor are we obligated to pay any storage fees incurred because you abandoned any property to any other person or organization.

E.  Payment of Loss

We will pay losses within 30 days after the earliest of the following:

    1.  we reach agreement with you;

    2.  final judgment is rendered in a court of law; or

    3.  an appraisal award is filed with us.

F.  Protect and Recover

In the event of a covered loss to property, you must protect the property from further loss and make every effort to recover it. We will pay the reasonable costs you incur under this condition in addition to any other payments we make for loss or damage under Property Coverage, but the amount we pay under this provision will not exceed the 'Limit of Insurance' shown on the Declarations Page for 'Hull'.

G.  Loss Payable Conditions

For covered property in which both you and a 'Loss Payee' shown in the Declarations Page have an insurable interest, we will:

    1.  adjust losses with you; and

    2.  pay any claim for loss or damage to the 'Loss Payee' and you, as interests appear.

## PROTECTION AND INDEMNITY

I.  Coverage

    A.  We will pay sums which:

        1.  an **insured** becomes legally obligated to pay as a result of ownership, operation, or maintenance of an **insured yacht**; or

        2.  you become legally obligated to pay as a result of the operation of a **nonowned yacht** due to:

The Helmsman Yacht Policy

   a.  loss or damage to any other ship or vessel or other property caused by an **insured yacht** or **nonowned yacht**;

   b.  any attempted or actual raising, removal or destruction of the wreck of an **insured yacht**, a **nonowned yacht** or the cargo in or on an **insured yacht** or **nonowned yacht**;

   c.  failure to raise, remove or destroy the wreck of an **insured yacht** or **nonowned yacht**;

   d.  property damage to a **nonowned yacht**;

   e.  loss of life or bodily injury; or

   f.  payments made on account of life salvage.

With respect to a paid captain or paid crew member, this includes the transportation, wages, maintenance and cure provisions of general maritime law, including Jones Act.

**B.  Damage to Property of Others While Racing**

We will pay sums for which the **insured** becomes responsible by reason of loss or damage to any other ship or vessel or other property caused by the **insured yacht** while competing in or preparing for any sailboat race organized by any recognized yacht racing association or club. We will determine such responsibility based on the racing rules of the United States Sailing Association or any successor organization. The amount we will pay under this provision will not increase the limit of insurance.

**C.  Defense**

We have the right and duty to defend any suit to which this insurance applies. But we may investigate and settle any claim or suit at our discretion. Our duty to defend any claims or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages resulting from the occurrence equals the limit of insurance.

**D.  Release Bonds**

If the **insured yacht** is arrested, confiscated, or detained because of injury or damage to which this coverage applies, we will pay the cost of bond to release the **insured yacht**. The amount we pay for this bond will not increase the limit of insurance.

**E.  Exclusions** - The following apply in addition to the GENERAL EXCLUSIONS:

Insurance under Protection and Indemnity does not apply to:

  1.  Intentional Injury or Damage

    **bodily injury** or **property damage** expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

  2.  Transportation

    **bodily injury** or **property damage** arising out of the transportation of the **insured yacht** or a **nonowned yacht** on land.

  3.  Assumption of Liability:

    any liability assumed by you under any contract or agreement (other than liability that you would have in the absence of the contract or agreement). However, prior to a loss or damage, you may waive your rights of recovery against another party by signing hold harmless agreements that are included in:

    a.  registration forms for sailboat races; or

    b.  storage or slip rental contracts;

    in connection with the ownership of an **insured yacht**.

  4.  Fines Against You

    any fine or other penalty imposed against you by any government unit.

  5.  Personal Watercraft

    **bodily injury** or **property damage** arising out of the ownership, maintenance or use of personal watercraft, such as jet skis or wave runners.

  6.  Workers' Compensation and Similar Laws

    any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

  7.  Master or Member of Crew

    With respect to bodily **injury** to a master or member of the crew of any vessel:

a.   any obligation to pay punitive or exemplary damages because of **bodily injury** to an employee who is employed in violation of the law.

b.   **bodily injury** to an **employee** while employed in violation of any law with your knowledge.

c.   damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

d.   **bodily injury** to any person subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-945), any other federal workers' or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

e.   **bodily injury** to any person subject to the Federal Employers' Liability Act (45 USC Sections 51-60);

f.   any obligation to pay fines or penalties imposed for violation of federal or state law; or

g.   damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) or under any other federal law awarding damages for violation of those laws or regulations issued thereunder or any amendments to those laws.

8.   Oil Pollution Liability

any liability covered or excluded under the "Oil Pollution Liability" section of this policy.

9.   A Claim or Suit for Punitive or Exemplary Damages

If a suit shall have been brought against you for claims falling within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense to such action; however, we shall not have any obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

## II.   Limit of Insurance

We will pay no more than the applicable limit of insurance for all damages, losses or release bonds resulting from any **occurrence**. This is the most we will pay regardless of the number of **insureds** or boats involved, claims made, release bonds, **insured yachts, nonowned yachts** or premiums shown on the Declarations Page.

A.   The limit of insurance shown on the Declarations Page for 'Hull' is the limit of insurance applicable to **property damage** to a **nonowned yacht**.

B.   The limit of insurance shown on the Declarations Page for 'Protection and Indemnity' is the limit of insurance applicable to all other losses under this coverage.

# OIL POLLUTION LIABILITY

## I.   Additional Definitions

The following additional definitions apply to this coverage:

A.   **Oil Pollution Incident** as used in this coverage means the sudden, accidental and unexpected emission, discharge, release, leakage, escape or spillage of a **contaminant** from an **insured yacht** or **nonowned yacht** in an accident that is specific in place and time within the policy period:

B.   **Contaminant** means any petroleum product, chemical, lubricant, or solvent normally associated with the use and operation of a yacht.

## II.   Coverage

A.   We will pay the reasonable cost and expenses you incur arising from the unintentional spillage of a **contaminant** from an **insured yacht** or **nonowned yacht**, subject to the terms and conditions of this policy.  Coverage under this section is provided for:

1.   the sums which you are legally liable to pay as a result of **property damage** or **bodily injury** arising out of a oil pollution incident;

2.   the reasonable costs directly associated with the actual clean-up of an **oil pollution incident**;

3.   the reasonable cost or expenses legally imposed upon you by those government authorities assisting or monitoring an **oil pollution incident**;

YH7300-0203                             The Helmsman Yacht Policy                            TOC

    4.  administrative charges and civil expenses levied against you by a judiciary body as a result of an **oil pollution incident**;

    5.  the reasonable costs and expenses to defend you against legal action from an **oil pollution incident**.

  B.  This coverage will not apply if **you** or any **insured** refuses or knowingly fails:

    1.  to report the incident giving rise to liability as required by law(s) and **you** or any **insured** knows or has reason to know of the **oil pollution incident**; or

    2.  to provide all reasonable cooperation and assistance with containment and clean-up operations as is required by law or by someone acting under their legal authority.

C.  Defense

We have the right and duty to defend any suit to which this insurance applies. But we may investigate and settle any claim or suit at our discretion. Our duty to defend any claims or suit ends when the amount we pay, or tender to the Court of Jurisdiction for any pending litigation on your behalf, for damages or expense resulting from the **occurrence** equals the limit of insurance.

D.  Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:

    Insurance under Oil Pollution Liability does not apply to:

    1.  liability which has been assumed by **you** or any **insured** under contract or agreement;

    2.  liability for an **incident** that is caused by or resulting from any intentional act or willful misconduct by **you** or any **insured**;

    3.  any claim for punitive damages, or fine, penalty or cost of defense arising out of a criminal violation;

    4.  any assessment of liability for natural resource damage unless legal action commences within one (1) year of the incident.

III.  Limit of Insurance

    We will pay no more than the applicable limit of insurance for all damages or expenses resulting from any **occurrence**. This is the most we will pay regardless of the number of **insureds** or boats involved, claims made, **insured yachts**, **nonowned yachts**, or premiums shown on the Declarations Page.

## LONGSHORE AND HARBOR WORKERS' COMPENSATION

If 'Longshore and Harbor Workers' Compensation' is listed on the Declarations Page, the following applies:

We will cover any compensation payments you are responsible for under the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950) and any amendments to this act, as long as your responsibility arises from your ownership or use of an **insured yacht**. We will comply with all the provisions of this Act, and with any rules, regulations, orders and decisions of the Office of Workers' Compensation Programs of the US Department of Labor.

## MEDICAL PAYMENTS

I.  Coverage

  A.  Insuring Agreement

    1.  We will pay for medical expenses as described below for **bodily injury** caused by an accident that occurs:

      a.  during the policy period;

      b.  in, upon, during boarding, or leaving an **insured yacht**;

      provided that:

      a.  the expenses are incurred and reported to us within one year of the date of the accident.

      b.  the injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    2.  We will make these payments regardless of fault. We will pay reasonable expenses for:

      a.  first aid at the time of the accident;

      b.  necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      c.  necessary ambulance, hospital, professional nursing and funeral services.

YH7300-0203                         The Helmsman Yacht Policy                              TOC

   B. Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:

     We will not pay expenses for bodily injury:

     1. to a person, whether or not an employee of any insured, if benefits of the bodily injury are payable or must be provided under workers compensation, disability benefits law, or similar law.

     2. to a person hired to work for or on behalf of any insured.

     3. to anyone who is a trespasser.

     4. arising out of any responsibility for payment assumed by you under contract or agreement. This exclusion does not apply to any responsibility you would have in the absence of the contract or agreement.

II. Limit of Insurance

   The limit of insurance shown in the Declarations Page for 'Medical Payments' is the total amount we will pay for all expenses resulting from any one occurrence incurred by any one person.

III. Loss Conditions

   Coverage for Medical Payments is subject to the following conditions:

   A. Medical and Other Reports

     Each injured person, or someone on behalf of the injured person, shall:

     1. as soon as practicable, give to us all information pertaining to the accident and injury; and

     2. give us authorization to obtain pertinent medical reports and copies of these reports.

   B. Proof and Payment of Claim:

     When requested by us, the person seeking payment, the injured person or someone on their behalf must file a written, sworn proof of loss with us.

     1. This proof of loss must include:

       a. the name and address of each person and organization performing services which are covered under the Medical Payments Insurance;

       b. the nature, extent and date of these services;

       c. itemized charges, and any amounts already paid.

     2. This proof of loss must be filed:

       a. as soon as reasonably possible after completion of services, or

       b. within one (1) year of the date of the accident,

     whichever of the above occurs first.

## UNINSURED AND UNDERINSURED BOATER

I. Coverage

   A. Insuring Agreement

     1. We will pay all sums a covered person is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured boat that is not an insured yacht or a nonowned yacht. The damages must result from bodily injury caused by an occurrence, sustained by the covered person while on board the insured yacht. The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the uninsured or underinsured boat that is not an insured yacht or a nonowned yacht.

     2. If an underinsured boat causes the bodily injury, we will pay only after all other liability bonds or policies have been exhausted by judgments or payments.

   B. Exclusions - The following apply in addition to the GENERAL EXCLUSIONS:

     Insurance under this section does not apply:

     1. to any claim settled without our consent;

     2. to damages because of bodily injury to any person using a boat without a reasonable belief that the person is entitled to do so; or

     3. directly or indirectly to benefit any insurer or self-insurer under any workers' compensation, disability benefits law or any similar law.

YH7300-0203                                The Helmsman Yacht Policy                                TOC

    4.   to any damages because of **bodily injury** to any person arising out of the transportation of an **uninsured or underinsured boat** on land.

II.  Limit of Insurance

The limit of insurance shown in the Declarations Page for 'Uninsured and Underinsured Boater' is the total amount we will pay for all damages resulting from any one **occurrence**. This is the most we will pay regardless of the number of **insured yachts, covered persons**, premiums paid, claims made or boats involved in the accident.

Any amount payable under this coverage shall be reduced by all sums paid by or for anyone who is legally responsible, including all sums paid under any other coverage of this policy. Any sums paid under this coverage will reduce any amount an **insured** is entitled to recover under 'Protection and Indemnity'.

III.  Additional Definitions

The following additional definitions apply to this coverage:

      A.  **Covered person** as used in this coverage means:

1.  **You** or any **family member**.
2.  Any other person occupying an **insured yacht**.
3.  Anyone entitled to recover damages because of **bodily injury** sustained by a person described in 1. or 2. above.

However, a **covered person** does not include **you** or a **family member**, while occupying or struck by any boat that is not an **insured yacht** but owned by **you** or any **family member**.

      B.  **Underinsured boat** means a waterborne vehicle of any type for which the sum of all liability bonds or policies at the time of the accident provides limits:

1.  less than the limit of this coverage; or
2.  that are reduced by payments to others who are not **covered persons** under this coverage who are injured in the accident such that the remaining limits available are less than the amount of this coverage.

An underinsured boat does not include any boat or equipment:

1.  Owned or furnished or available for the regular use of **you** or any **family member**, or
2.  owned by any governmental unit or agency.

C.  **Uninsured boat** means a waterborne vehicle of any type:

1.  to which no **bodily injury** bond or policy applies at the time of the accident.
2.  which is a boat whose operator or owner cannot be identified and which hits:
    a.  **You** or any **family member**;
    b.  A boat **you** or any **family members** are occupying; or
    c.  An **insured yacht**.

An uninsured boat does not include any boat or equipment:

1.  Owned or furnished or available for the regular use of **you** or any **family member**, or
2.  owned by any governmental unit or agency.

D.  **Uninsured or underinsured boat** means a boat that is either an **uninsured boat** or an **underinsured boat**.

## GENERAL EXCLUSIONS

**These exclusions apply in addition to any exclusion applicable to a specific coverage or group of coverages:**

No coverage is provided under this policy for loss or damage, liabilities incurred by any person, injury or damages or expenses of any type for loss caused by, resulting from or arising out of:

I.  Nuclear Exclusion

nuclear incidents, reaction, radiation, or any radioactive contamination.

YH7300-0203                        The Helmsman Yacht Policy                        TOC
This Policy is signed at the Home Office of the company by its president and secretary.

### MARKEL AMERICAN INSURANCE COMPANY
Glen Allen, Virginia

Gregory B. Nevers
Secretary

T. Tamraz Grove
President

### MARKEL INSURANCE COMPANYDeerfield, Illinois

Linda Rotz
Secretary

Britton L. Glisson
President

**Administrative Office:**
P.O. Box 906
Pewaukee, WI  53072-0906
800-806-9626